

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00151-CR

CHRISTOPHER BLAKE ALAMI                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Christopher Blake Alami appeals his conviction for felony murder. In five points, Alami argues that the evidence is legally and factually insufficient to support his conviction and that the trial court abused its discretion by overruling his rule 403 objections and his motion for a mistrial. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 2008, at around 7:45 p.m., Alami's mother dropped Alami off at a Buffalo Wild Wings (the "restaurant") located in South Fort Worth. Alami met Madhuri Kumar at the restaurant, where they both consumed alcohol before leaving at around 10:55 p.m. in Kumar's Lexus. Alami was driving Kumar's Lexus northbound on Interstate 35 West with Kumar in the passenger seat when the left front corner of the Lexus struck the right rear corner of a Hyundai being driven by Sharmon Teel in the center lane of the roadway. Teel maintained control of her Hyundai, but the Lexus passed by the right side of Teel's vehicle, overcorrected to the right side of the roadway, crossed onto the right shoulder, overcorrected to the left in an attempt to move back onto the roadway, started skidding and rotating counterclockwise across the roadway, and collided into a barrier on the left side of the roadway. The passenger side of the Lexus made contact with the barrier, crushing the center post of the vehicle into Kumar and pushing Kumar towards the center of the vehicle. Kumar sustained severe internal injuries and died as a result of the collision. Alami suffered a jaw fracture and a fracture in the back of his head.

Kayden Bathory, an emergency medical technician, arrived at the scene and helped Alami exit the wrecked Lexus. Bathory smelled alcohol coming from Alami's breath and asked him how much he had had to drink. Alami responded, "Too much."

2

Officer Vincent Brown also arrived on the scene and spoke to Alami, who was leaning against the center concrete dividing wall. Officer Brown noticed that Alami had red, bloodshot eyes; slow, slurred speech; and a moderate smell of alcohol on his breath. Alami's condition gave Officer Brown the indication that Alami "had possibly been drinking and maybe had been intoxicated."

Bathory helped transfer Alami to a different ambulance, where Nick Lowery, a paramedic, examined Alami. Lowery smelled an alcohol-like odor coming from Alami and questioned him about how much he had had to drink. Alami responded, "Too much."

Alami was transported to John Peter Smith Hospital. There, he refused Officer Jonathan McKee's request to provide a blood sample, so Officer McKee initiated procedures for a mandatory blood draw, which Nurse Denise Nemia performed. Test results showed that Alami had a blood-alcohol content of 0.19 grams of alcohol per 100 millimeters of blood.

The State indicted Alami for felony murder, alleging felony DWI as the underlying felony offense. Specifically, the indictment alleged in relevant part that on June 13, 2008, Alami did

> then and there commit a felony, to-wit: driving while intoxicated, after having been previously convicted two times of the offense of driving while intoxicated and in the course of and in furtherance of the commission of said felony, he committed or attempted to commit an act clearly dangerous to human life, to-wit: by causing the motor vehicle he was driving and operating to collide with and strike another motor vehicle which resulted in the defendant's losing control of the motor vehicle he was driving and operating which did cause it to collide with a concrete barrier and guardrail which caused

3

the death of Madhuri Kumar who was an occupant in the motor vehicle being driven and operated by the defendant.

A jury convicted Alami of felony murder and assessed his punishment at forty years' confinement. The trial court sentenced him accordingly. This appeal followed.

## III. EVIDENTIARY SUFFICIENCY

In his first and second points, Alami argues that the evidence is legally and factually insufficient to support his conviction. He contends that several witnesses—who were also present at the restaurant on June 13, 2008—testified that he appeared to be sober prior to when he and Kumar left the restaurant and that he did not commit an act clearly dangerous to human life that caused Kumar's death because he "tried to avoid Ms. Teel's slower moving vehicle and by doing so overcorrected the Lexus, which caused it to slide into the safety barrier."

The court of criminal appeals recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that "the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *See Brooks v. State*, 323 S.W.3d 893, 902, 912

4

(Tex. Crim. App. 2010). Accordingly, we will apply the same standard of review to all of Appellant's sufficiency complaints.

## A. Standard of Review

In our due process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting

inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## B. DWI and Felony Murder

A person commits the offense of DWI "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). "Intoxicated" is defined in part as having an alcohol concentration of 0.08 or more. *Id.* § 49.01(2)(B) (Vernon 2003). Under chapter 49 of the penal code, proof of a culpable mental state is not required for a DWI conviction. *Brown v. State*, 290 S.W.3d 247, 249 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing penal code section 49.11, which provides in part that "proof of a culpable mental state is not required for conviction of an offense under this chapter").

An offense under section 49.04 is a third-degree felony if the defendant has previously been convicted two times of any offense relating to the operating of a motor vehicle while intoxicated. Tex. Penal Code Ann. § 49.09(b)(2) (Vernon Supp. 2010). "The Legislature has plainly dispensed with proof of a culpable mental state for felony DWI." *Lomax v. State*, 233 S.W.3d 302, 304 n.6 (Tex. Crim. App. 2007) (citing penal code section 49.11).

A person commits felony murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in the immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human

6

life that causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2003). A felony DWI offense may serve as the underlying felony in a felony-murder prosecution:

> [D]eciding that Section 19.02(b)(3) dispenses with a culpable mental state is consistent with the historical purpose of the felony-murder rule, the very essence of which is to make a person guilty of an "unintentional" murder when he causes another person's death during the commission of some type of a felony. We hold that Section 19.02(b)(3) plainly dispenses with a culpable mental state.

*Lomax*, 233 S.W.3d at 305 (citations omitted), 309 ("The plain language of Section 19.02(b)(3) also does not exclude felony DWI as an underlying felony for a felony-murder prosecution, and we must understand the Legislature to have meant what the plain language of Section 19.02(b)(3) expresses."); *see Paniagua v. State*, No. 13-08-00228-CR, 2010 WL 672886, at *2–4 (Tex. App.—Corpus Christi Feb. 25, 2010, no pet.) (mem. op., not designated for publication); *Talamantes v. State*, No. 03-07-00668-CR, 2009 WL 416521, at *1 (Tex. App.—Austin Feb. 19, 2009, pet. ref'd) (mem. op., not designated for publication).

### C. Sufficient Evidence

The record demonstrates that Alami met Kumar at the restaurant and that several individuals, including Chalon Ybarra, Ann Johnston, Karen Hendricks, and Stacy Fischer, observed Alami consume alcohol while there before leaving with Kumar. Fischer testified that she thought Alami had consumed two beers and two shots of cinnamon Schnapps in a ninety-minute period.

7

After leaving the restaurant, the left front corner of the Lexus that Alami was driving northbound on Interstate 35 West struck the right rear corner of a Hyundai that was being driven by Teel in the center lane of the roadway. Teel, who was traveling at the speed limit of sixty miles per hour, felt a "jolt" when her vehicle was struck, and she and Matt Harris, who was driving a vehicle behind Teel, observed the Lexus cross onto the right shoulder, move back to the left and onto the roadway, start skidding across the roadway, and collide into a barrier on the left side of the roadway. The collision with the barrier crushed the center post of the vehicle into Kumar, who died from severe internal injuries. Dr. Nizam Peerwani performed Kumar's autopsy and identified the cause of Kumar's death as blunt force trauma.

According to both Bathory and Lowery, after the incident, Alami said that he had consumed "[t]oo much" to drink. Officer Brown observed that Alami had red, bloodshot eyes; slow, slurred speech; and a moderate smell of alcohol on his breath. Mandatory blood test results showed that Alami had a blood-alcohol content of .19 grams of alcohol per 100 millimeters of blood, which was over twice the legal limit. Officer Brown opined that Alami's intoxicated driving had caused the accident. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) ("Being intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident . . . .").

Deputy Laura Watts testified as an expert on fingerprint identification and concluded that the right thumbprint on a set of fingerprints that she had obtained from Alami before trial matched the right thumbprints found on two of Alami's prior judgments of conviction for DWI.

Alami challenges the sufficiency of the evidence to show that he was intoxicated, arguing that several witnesses testified that he "appeared to be sober" prior to leaving the restaurant with Kumar.[1] But Max Courtney, an expert who testified on behalf of the State, opined that a person's appearance is not a reliable factor in determining whether that person is intoxicated and that a person who consumes a large amount of alcohol could appear not to be intoxicated to a casual observer. He testified on direct examination,

Q. The next thing I want to ask you about is the subjective evaluation of intoxication. How reliable is it to use, as your determining factor, how a person looks to determine if they're intoxicated?

A. Not accurate.

Q. Not accurate. Have there actually been some studies that have looked at that?

A. There have been.

Q. And you're familiar with the Widmark study?

A. Yes.

Q. And what did the Widmark study involve?

---

[1]These witnesses included Ybarra, Johnston, Hendricks, and Fischer.

9

A. It involved - - this was, I believe, in Sweden where they had to - - in a DWI case they had to take the person before a trained physician and that physician would then evaluate the person and see if they could come to the conclusion that they were intoxicated. Basically the bottom line of that study was that a person with an alcohol concentration of .15, the physicians were only able to correctly diagnose the person as intoxicated in half of the cases.

Q. So in 50 percent of the time physicians misdiagnosed someone at a .15, almost two times the per se level as being intoxicated?

A. Correct.

. . . .

Q. And can you explain why is it that a person who's consumed a large amount of alcohol, how can they, to a casual observer, appear to be normal?

A. By what we call masking.

Q. And what is that?

A. Masking is an ability to - - it's a learned behavior wherein you're able to hide your symptoms of intoxication from the observer.

Q. Okay. And the more common it is for a person to consume alcohol is their ability to mask, likewise, probably greater?

A. Yes, sir.

Moreover, the mandatory blood test results showed that Alami had a blood-alcohol content of .19 grams of alcohol per 100 millimeters of blood, which was over twice the legal limit.

Alami argues that he did not commit an act clearly dangerous to human life because he tried to avoid Teel's vehicle. But Timothy Lovett, an accident reconstructionist who performed a post-collision inspection of the Lexus and

gave opinions regarding the incident, opined that the Lexus was in good working order before the incident, that the driver of the Lexus was at fault in causing the accident, that this is the type of automobile crash that he would expect to see when an intoxicated driver is involved, and that a sober person could have avoided the collision. Significantly, using the "yaw marks" left behind by the skidding Lexus, Lovett calculated the speed of the vehicle as it crossed from the right shoulder back onto the roadway and began to skid and rotate counterclockwise (which was after it had contacted Teel's vehicle) at between eighty and eighty-seven miles per hour. In light of this and the above evidence, a rational jury could have determined beyond a reasonable doubt that Alami committed an act clearly dangerous to human life when he drove the Lexus at an excessive rate of speed and caused the speeding Lexus to contact Teel's vehicle, resulting in Alami's losing control of the Lexus and causing it to collide into the barrier.

To the extent that Alami argues that the evidence is insufficient to show that he committed an act clearly dangerous to human life because there is contrary evidence that he merely overcorrected the Lexus, the jury was free to resolve this conflict in the evidence, if any, in favor of the State, which it did. *See Cain v. State*, 958 S.W.2d 404, 409–10 (Tex. Crim. App. 1997).

The concurrence disagrees that a felony DWI offense may serve as the underlying felony in a felony-murder prosecution and urges that statutory changes be made by the legislature. The majority follows the law as interpreted

11

by the court of criminal appeals in *Lomax* and leaves the decision to amend the law to the legislature.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Alami committed felony DWI and, in the course of and in furtherance of the commission of felony DWI, committed an act clearly dangerous to human life when he caused the speeding Lexus to contact Teel's vehicle, which resulted in Alami's losing control of his vehicle and caused the vehicle to ultimately collide with a concrete barrier, causing Kumar's death. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *see also* Tex. Penal Code Ann. § 19.02(b)(3). Accordingly, we hold that the evidence is sufficient to support Alami's conviction for felony murder. We overrule Alami's first and second points.

## IV.  RULE 403 OBJECTIONS

In his third point, Alami argues that the trial court abused its discretion by overruling his rule 403 objection to the admission of State's Exhibit 11, a post-collision photograph showing part of the interior of Kumar's Lexus, including a deceased Kumar lying in the passenger seat.[2]  In his fourth point, Alami argues that the trial court abused its discretion by admitting evidence of his prior convictions (State's Exhibits 39 and 40) over his rule 403 objection.[3]

---

[2]We hold that Alami preserved this point for appellate review.

[3]We hold that Alami preserved this point for appellate review.

12

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. Once appellant makes a rule 403 objection, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). A rule 403 balancing test includes the following factors: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832 (1997).

Rule 403 requires that a photograph have some probative value and that its probative value not be substantially outweighed by its inflammatory nature.

13

Tex. R. Evid. 403; *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009), *cert. denied*, 130 S. Ct. 3411 (2010). A court may consider many factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, including (1) the number of exhibits offered, (2) their gruesomeness, (3) their detail, (4) their size, (5) whether they are in color or are in black and white, (6) whether they are close up, (7) whether the body depicted is clothed or naked, (8) the availability of other means of proof, and (9) other circumstances to the individual case. *Williams*, 301 S.W.3d at 690 (citing *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992)). Photographs are neither cumulative nor lacking in significant probative value simply because they merely corroborate other kinds of evidence. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000).

We will not disturb a trial court's evidentiary ruling absent an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). As long as the trial court's ruling is within the zone of reasonable disagreement and is correct under any theory of law applicable to the case, it must be upheld. *Id.*; *see Williams*, 301 S.W.3d at 690 (stating that the admissibility of photographs over an objection is within the sound discretion of the trial judge).

## A.    State's Exhibit 11

With regard to State's Exhibit 11, Alami argues that the trial court did not conduct a balancing test as required by rule 403.  The following exchange in the record demonstrates otherwise:

> [Prosecutor]:    Your Honor, at this time I would like to publish certain exhibits, with this witness, on the screen.  I'd request permission to use State's Exhibit No. 11 for all purposes but not to publish 11 on the screen.  I have a smaller one that I've shown Defense Attorney and I'll show you as well, Judge.
>
> THE COURT:   Is 11 being offered at this time?
>
> [Prosecutor]:    Yes, it is.
>
> THE COURT:   All right.  Do you have any additional objections to 11 other than 403?
>
> [Defense counsel]:   May I have a running objection to State's 11?
>
> THE COURT:  But other than the 403 objection, you have no additional objections?
>
> [Defense counsel]:   No, Your Honor.
>
> THE COURT:  *At this time it's balanced and overruled*.  State's 11 is admitted for all purposes.  And you may have a running objection to any use, display or testimony concerning 11.  [Emphasis added.]

Alami further argues that State's Exhibit 11 did nothing more "than to inflame the jury in sympathy for the State."  We disagree.  The exhibit is a black and white photograph that depicts the front portion of the interior of Kumar's Lexus.  Kumar is lying dead in the passenger seat, but she is clothed, and there are no gruesome, external injuries visible.   The photograph corroborated

15

(1) Martye Ferguson's[4] testimony regarding the extensive damage to the passenger side of the vehicle, (2) Lovett's testimony that Kumar died as a result of the collision with the barrier, and (3) Dr. Peerwani's testimony that Kumar did not suffer any major external trauma. To the extent the photograph could be described as disturbing because it depicts a lifeless Kumar, the photograph portrays no more than the disturbing consequences of Alami's felony-murder offense. Weighing the rule 403 factors, the trial court could have reasonably concluded that the probative value of the photograph was not substantially outweighed by its inflammatory nature, if any. *See Garcia v. State*, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1224 (2007) ("[W]hen determining whether evidence is admissible under Rule 403, we do not consider just whether the evidence is more prejudicial than probative, we consider whether the probative value is *substantially* outweighed by the danger of *unfair* prejudice."). Accordingly, we hold that the trial court did not abuse its discretion by overruling Alami's rule 403 objection to State's Exhibit 11 and by admitting the photograph. We overrule Alami's third point.

### B. State's Exhibits 39 and 40

With regard to State's Exhibits 39 and 40, Alami argues that the trial court did not conduct a rule 403 balancing test. The trial court expressly conducted the balancing test as follows:

---

[4]Ferguson was the first paramedic to respond to the incident.

16

[Prosecutor]:    Your Honor, at this time I would offer for all purposes State's Exhibit No. 39 and State's Exhibit No. 40.

THE COURT:  Currently, there's a relevance objection pending before the Court.  You re-urge that objection?

[Defense counsel]:   I re-urge that objection, yes, Your Honor.

THE COURT:  That objection is overruled.  You also have a 403 objection.  Do you re-urge that objection?

[Defense counsel]:   Yes, as to both instruments, State's 39 and 40.

THE COURT:  *Your objection is balanced against the entire record*.  It's also overruled individually and specifically, 401 and 403, as to each objection.  39 and 40.  And they're both admitted.  [Emphasis added.]

Alami also argues that the evidence of his prior convictions "did no more than to inflame the jury in sympathy for the State." We disagree.  A person may be charged with felony DWI if he has two previous convictions for DWI.  Tex. Penal Code Ann. § 49.09(b)(2).  The two prior DWI offenses are necessary elements of the offense of felony DWI; they are jurisdictional, as opposed to mere enhancement allegations.  *See Martin v. State*, 200 S.W.3d 635, 640 (Tex. Crim. App. 2006); *State v. Wheeler*, 790 S.W.2d 415, 416 (Tex. App.—Amarillo 1990, no pet.).  Therefore, to obtain a conviction for felony DWI, the State must prove the two prior DWI convictions at the guilt-innocence stage of trial.  *See Barfield v. State*, 63 S.W.3d 446, 448 (Tex. Crim. App. 2001); *Mapes v. State*, 187 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Here, State's Exhibit 39 is a judgment of final conviction dated April 21, 2006, in which a Collin County court found Alami guilty of DWI.  State's Exhibit

17

40 is a judgment of conviction dated October 9, 2007, in which a Denton County court found Alami guilty of a second DWI. Alami did not stipulate to the prior DWI convictions. Therefore, to convict Alami of felony DWI, the State had to prove at the guilt-innocence phase that Alami had two prior convictions for DWI—two essential elements of the felony DWI offense. The probative value of State's Exhibits 39 and 40 was, consequently, very high. Alami directs us to no evidence in the record that the State used this evidence for a purpose other than to prove the jurisdictional elements of felony DWI.[5]

Weighing the rule 403 factors, the trial court could have reasonably concluded that the probative value of State's Exhibits 39 and 40 was not substantially outweighed by the danger of unfair prejudice. *See Garcia*, 201 S.W.3d at 704. Accordingly, we overrule Alami's fourth point.

## V. MISTRIAL

In his fifth point, Alami argues that the trial court abused its discretion by overruling his motion for a mistrial because the State's closing argument attempted to shift the burden of proof.

We review a trial court's refusal to grant a mistrial for an abuse of discretion. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). To be

---

[5]Further, as the State points out, the trial court charged the jury that it could only consider the evidence of Alami's prior convictions "on the issue of whether the Defendant was committing a felony at the time of the alleged offense" and not "in any manner proving or tending to prove that [Alami] was intoxicated while operating a motor vehicle in a public place on or about the 13th day of June, 2008."

permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). To determine whether jury argument is improper, we assess the argument as a whole and in context. *Cruz v. State*, 225 S.W.3d 546, 549 (Tex. Crim. App. 2007).

The following exchanges occurred:

[Prosecutor]: . . . Repeatability, corroboration. And he wants to spend a lot of time talking about Mr. Lovett. And, you know what, if Mr. Lovett did not help you understand the testimony, if he didn't help you understand the testimony, then toss him out, because we don't need him. And that's the incredible thing about this case, the weight of evidence we have, we could have rested after the EMTs testified, after adding the testimony about his prior convictions, because by the time the EMTs took the stand, you had evidence from Sharmon Teel - - and this idea that the damage - - that somehow he was avoiding an accident, if you believe that, then the damage to Sharmon Teel's vehicle appeared out of thin air, he had nothing to do with it.

Mr. Lovett explained to you, very clearly. The version that he would like to have, the version that he wished was here is that Sharmon was somehow responsible. It is impossible. And he has no burden of proof. Don't you know if there was an expert that he could have taken and brought into this courtroom to dispute the findings of Mr. Lovett, you would have heard it? You would have heard it.

[Defense counsel]: Object to that. It's an attempt to shift the burden of proof. It's an improper jury argument.

THE COURT: I'm sustaining the objection as a precaution.

19

[Defense counsel]: I'd ask the Court to instruct the jury to disregard the comment by the prosecutor.

THE COURT: I will instruct the jury: The Defense has no burden of proof.

[Defense counsel]: I'd ask the Court for a mistrial.

THE COURT: That will be denied.

The State's argument above followed defense counsel's argument, which included the following:

> Did that behavior, in essence, cause the death of Ms. Kumar? Well, if you believe that [Alami] struck the back of the Santa Fe - - and I'm going to get into Mr. Lovett's calculation of the speed of the car in a minute because I think they're horribly flawed and I will explain to you why. . . .
>
> . . . .
>
> In this, State's Exhibit No. 42, Mr. Lovett hypothetically draws a point of collision, a point of collision. "Do you know where the collision happened, Mr. Lovett?"
>
> "Well, I don't know where it happened."
>
> "Did you ask Detective Davis? Are there any objects on the ground that we could look to?"
>
> "No." But somehow, arbitrarily, he just puts it up there and says, "Well, I don't use it for measure. That's not what I use for measurements." Well, it was pretty important depiction how he thought it happened and how the car turned.

The State's complained-of argument—which occurred immediately after the prosecutor reminded the jury that Alami "has no burden of proof"—was proper because it was made in response to defense counsel's argument challenging Lovett's calculations and conclusions. Because the State's argument

20

was within one of the four  permissible areas of jury argument, we hold that the trial court did not abuse its discretion by denying Alami's motion for a mistrial. *See Blue v. State*, No. 14-09-00184-CR, 2010 WL 1655485, at *6–7 (Tex. App.—Houston [14th Dist.] Apr. 27, 2010, no pet.) (mem. op., not designated for publication) (overruling appellant's argument that the trial court abused its discretion by denying his motion for a mistrial).

## VI. CONCLUSION

Having overruled Alami's five points, we affirm the trial court's judgment.


                              BILL MEIER
                              JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DAUPHINOT, J. filed a concurring opinion.

PUBLISH

DELIVERED: January 6, 2011

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 02-09-00151-CR

CHRISTOPHER BLAKE ALAMI                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## CONCURRING OPINION

------------

Appellant Christopher Blake Alami was charged with felony murder, with felony driving while intoxicated (DWI) as the predicate felony. Appellant challenges the sufficiency of the evidence, and the majority correctly holds the evidence sufficient under the *Jackson* standard. But the majority mistakenly states that I do not believe felony DWI can serve as the underlying felony in a felony-murder prosecution.[1] So long as the State proves that a defendant committed an act clearly dangerous to human life that caused the death of an individual during the commission of a felony, including a felony DWI, the State

------------

[1]Majority op. at 12.

2

proves felony murder.  However, the underlying felony alone cannot be the act clearly dangerous to human life.

This court, our sister courts, and the Texas Court of Criminal Appeals have all addressed the issue of whether felony murder and intoxication manslaughter are *in pari materia*.  That is, we have all addressed the question of whether proving death during DWI is, alone, sufficient to prove felony murder.  We have held that it is not.  This court explained,

> Importantly, felony murder and intoxication manslaughter require different elements of proof.  Felony murder requires the commission of an underlying felony, which intoxication manslaughter does not—a person can be convicted of intoxication manslaughter even if he was committing misdemeanor DWI at the time his actions caused another's death.  Felony murder also requires that the defendant have committed "an act clearly dangerous to human life," yet the intoxication manslaughter statute applies when the defendant causes a death by "accident or mistake."[2]

Felony murder requires an underlying felony as well as a second act clearly dangerous to human life that results in the death of another person.[3] Intoxication manslaughter requires DWI and death.[4]  Clearly, DWI cannot, alone, be the act clearly dangerous to human life.  If it were, every intoxication manslaughter would be a felony murder if the driver had been twice previously

---

[2]*Strickland v. State,* 193 S.W.3d 662, 667–68 (Tex. App.—Fort Worth 2006, pet. ref'd) (citations omitted).

[3]*See* Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2003).

[4]*Id.* § 49.08 (Vernon Supp. 2010).

convicted of DWI, and there would be no need to plead or to prove an additional act clearly dangerous to human life.

The majority here has affirmed a conviction for felony murder when DWI serves as the predicate felony and the act clearly dangerous to human life is the intoxicated driving. As the majority points out, Timothy Lovett, the accident reconstructionist who testified for the State, stated that the automobile crash that killed Kumar was the type of automobile crash that he would expect to see when an intoxicated driver was involved because a sober person could have avoided the collision.[5] Officer Brown testified that Appellant's intoxicated driving caused the wreck. Although the act clearly dangerous to human life may flow naturally from the underlying felony, the legislature has not permitted the act to be the underlying felony offense.

Felony murder has two distinct requirements: the commission of an underlying felony, which may or may not require a mental state, and the commission of an act clearly dangerous to human life.[6]

The State understandably wanted a higher range of punishment than intoxication manslaughter provides for a person who was committing felony DWI

---

[5]Majority op. at 9–10.

[6]Tex. Penal Code Ann. § 19.02(b)(3).

4

when he caused the death of another person.[7]  Because there is now a single range of punishment for intoxication manslaughter, whether the resulting death is caused during the driver's first, third, fourth, or fifth DWI,[8] the State is forced into the position of trying to separate the intoxicated driving from DWI.

Respectfully, I would submit that the legislature should assess the situation to determine whether it is appropriate for the penalty for intoxication manslaughter to be higher when the person committing the offense has twice previously been convicted of DWI, making the current DWI a felony DWI.  The legislature can easily rewrite the statute so that intoxication manslaughter for a first or even second DWI can have a different range of punishment from intoxication manslaughter committed by a person who has already been twice convicted of DWI.[9]

Neither the judicial branch nor the executive branch makes laws.  Neither the judicial branch nor the executive branch determines the appropriate range of

---

[7]*See id.* §§ 19.02(b), (c) (providing felony murder is generally a first-degree felony), 49.08 (providing intoxication manslaughter is generally a second-degree felony).

[8]*See id.* § 49.08.

[9]*See, e.g., id.* § 49.09(b-1), (b-2), (b-3) (elevating intoxication manslaughter to a first-degree felony if the person killed was a peace officer, firefighter, or emergency medical services personnel discharging an official duty).

punishment.  These decisions fall within the exclusive province of the legislature.

As the Texas Court of Criminal Appeals reminds us,

> [W]e interpret the Legislature's statutes, not its intentions. . . .  As the Supreme Court reminded us . . . , "[I]f Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent.  It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result."[10]

Because I agree that the evidence is sufficient to support Appellant's conviction but also believe that the legislature should consider modifying the range of punishment available under the intoxication manslaughter statute when the defendant has multiple DWI convictions, I respectfully concur.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  January 6, 2011

---

[10]*Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005) (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 542, 124 S. Ct. 1023, 1034 (2004)).