02-10-145-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00145-CR

 

 


 
 
 Willie Charles
 Price, Jr. a/k/a Willie C. Price, Jr.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM Criminal
District Court No. 1 OF Tarrant
COUNTY

----------

 

OPINION

----------

          A
jury convicted appellant Willie Charles Price, Jr. a/k/a Willie C. Price, Jr.
of aggravated robbery.[1] 
At appellant’s trial, victims of three similar robberies identified him as the
man who had robbed them.  In a sole point, appellant contends that the trial
court erred by allowing evidence about these extraneous offenses.  We affirm.

Background
Facts

          One
early morning in the summer of 2009, a man entered a Fort Worth convenience
store carrying a crowbar and wearing black clothing and a towel over his head.  While
holding the crowbar in an upright position, the man ordered the store’s clerk, Ray
Kilgore, to give him money from a cash register.  Kilgore gave the man the
money, and the man ran away.  Kilgore identified appellant as the robber
through a photo lineup.

          A
grand jury indicted appellant with aggravated robbery.  The parties filed
various pretrial documents (including the State’s notice of its intent to
introduce evidence of other crimes, wrongs, or acts that appellant had
committed), and appellant pled not guilty.  At trial, Kilgore identified
appellant as the man who had committed the robbery, and Kilgore said that he
had also seen appellant in the store earlier that evening.  A manager at the
store at the time of the robbery, Charlene Bradshaw, viewed a recording of the
robbery and also identified appellant at trial as a man she had seen in the
store earlier that evening.

          In
addition to presenting testimony from Kilgore and Bradshaw, the State called
three witnesses who identified appellant as the perpetrator of separate but
similar offenses in each of the convenience stores that they worked in.  Defense
counsel objected to this testimony under rules of evidence 403 and 404(b).[2] 
The trial court overruled the objection and admitted testimony regarding the
extraneous offenses. The court gave the jury a limiting instruction to only
consider the extraneous offenses for identity purposes.  The jury returned a
conviction for aggravated robbery and, after hearing evidence concerning
appellant’s punishment, assessed twenty years’ confinement.  Appellant filed
notice of this appeal.

The
Admission of the Extraneous Offenses

          In
his sole point, appellant contends that the trial court abused its discretion
by admitting evidence of the extraneous offenses.  We review the trial court’s
admission of evidence under an abuse of discretion standard.  Allen v. State,
202 S.W.3d 364, 367 (Tex. App.—Fort Worth 2006, pet. ref’d)
(op. on reh’g); see Montgomery v. State, 810 S.W.2d 372, 390–91 (Tex.
Crim. App. 1991) (op. on reh’g).  Under this standard, the trial court’s ruling
will be upheld as long as it falls within the “zone of reasonable
disagreement.”  Alami v. State, 333 S.W.3d 881, 889 (Tex. App.—Fort
Worth 2011, no pet.); Karnes v. State, 127 S.W.3d 184, 189
(Tex. App.—Fort Worth 2003, pet. ref’d), cert. denied,
129 S. Ct. 2391 (2009).

          “Evidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  It may, however, be
admissible for other purposes, such as . . . identity . . . .”  Tex. R. Evid.
404(b); see Montgomery, 810 S.W.2d at 387–88; see
also Segundo v. State, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining
that, generally, the defendant is to be tried only for the offense charged, not
for any other crimes), cert. denied, 130 S. Ct. 53 (2009).  The State,
as the proponent of extraneous offense evidence, bears the burden of showing
admissibility. Russell v. State, 113 S.W.3d 530, 535 (Tex. App.—Fort Worth
2003, pet. ref’d).  “Whether extraneous offense evidence has relevance apart
from character conformity, as required by Rule 404(b), is a question for the
trial court.”  Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

          For
an extraneous offense to be admissible to show identity, identity must be
raised as an issue in the case.  Lane v. State, 933 S.W.2d 504, 519
(Tex. Crim. App. 1996) (citing Moore v. State, 700 S.W.2d 193, 201 (Tex.
Crim. App. 1985), cert.
denied, 474
U.S. 1113 (1986)).  A defendant may raise the issue of identity during
cross-examination of the State’s witnesses.  Id.; see Page v.
State, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004) (“Identity can be raised by
defense cross-examination, such as when the identifying witness is impeached on
a material detail of the identification.”); see also Burton v. State,
230 S.W.3d 846, 849–50 (Tex. App.—Houston
[14th Dist.] 2007, no pet.) (holding that the defendant raised identity as an
issue in the case by questioning the certainty of the victim’s
identification).  In Page, the court of criminal appeals determined that
the defendant raised the issue of identity because questioning of the State’s
witness called into doubt either “her capacity to observe (i.e., she was
mistaken) or her truthfulness (i.e., she was lying), or both, [and] the
questions implied that the identification of appellant was not trustworthy.”  137
S.W.3d at 78.[3]

           Appellant’s
trial counsel asked questions during his cross-examination of the State’s
witnesses in a manner that obviously emphasized the issue of identity.[4] 
Counsel repeatedly asked Kilgore about whether he could clearly see appellant’s
face at the time of the robbery, and counsel also asked Kilgore several other
questions that sought to impugn Kilgore’s identification of appellant:

          Q  Okay.  And I believe you testified that you
were briefly face to face with the man, and I think that initially the man
comes in and walks directly up to you.  Is that when you were face to face with
him?

          A  Yeah.

          Q  All right.  And then you said that you didn’t
want to really take a look at him because you were afraid that it might
turn out badly for you; is that correct?

          A  Yes, when he was up close.

          Q  Okay.  So you were -- really you were kind
of trying not to look at him, would that be a fair assessment?

          A  Yeah, when he was up close.

          Q  Okay.  And then after that you were
trying not to look at him, would that be accurate?

          A  Yes.

          Q  All right.  So pretty much the time that you
got to view him right up close was that period of time when he walks up right
to you where you’re down there working on the computer, right?

          A  Yes.

          Q  Okay.  And after that you were really
kind of trying not to look at him; is that right?

          A    Yes. 

          . . . .

          Q  Okay.  And, in fact, on this video though that
we just saw that lasted several minutes there were several people within that
brief period of time that had on black clothing other than the robber; is that
correct?

          A  Yes.

          Q  Okay.  And I believe that also on that video
we saw several African American men that had a bald head; is that right?

          A  Yeah.

          Q  All right.  And so essentially there were lots
of people that came in there wearing black clothing with shaved heads, would
that be accurate to say?

          A  Not really, it wouldn't.

          . . . .

          Q  Okay.  Well, my question is, was what stated
on the 911 tape was that I couldn’t see his face?  You heard that?

          A  Yeah.[[5]]
[Emphasis added.]

          Counsel
also repeatedly asked Bradshaw about how certain her identification was because
while she saw appellant’s face when he entered the store to ask for water earlier
on the evening in question, she only saw the video of appellant’s second entry
in the store (when he committed the aggravated robbery), and the video did not
show appellant’s full face.  Counsel also questioned whether Bradshaw’s identification
was based on appellant’s facial features or simply his clothing.  Furthermore,
counsel asked the detective who prepared the photo lineup that Bradshaw and
Kilgore viewed whether the lineup was unduly suggestive and whether Kilgore had
initially struggled to identify appellant in the lineup.

          Thus,
as in Page, the question of whether defense counsel’s cross-examinations
of these witnesses raised the issue of identity “may best be answered with
another question:  If it was not about identity, what was it about?”  137
S.W.3d at 79.  Finally, we note that appellant’s counsel also made a direct
attack on the identification of appellant in his closing statements.  He
addressed identification as his first argument and said, “Now, we all know
people get misidentified all the time.”  Later, counsel told the jury, “I would
trust that you weigh the evidence carefully, and that when you come back, you
will have reasonable doubt as to the identity of the person on this video and
the testimony of those witnesses and find Mr. Price not guilty.”

          For
these reasons, we conclude that the trial court did not abuse its discretion by
deciding that the extraneous offenses were admissible to show appellant’s
identity under rule 404(b).  See Tex. R. Evid. 404(b); Allen, 202
S.W.3d at 367.

          Appellant
also asserts (without providing any significant analysis) that the trial court
should have excluded evidence regarding the extraneous offenses under rule 403.[6] 
See Tex. R. Evid. 403 (“Although relevant, evidence may be excluded if
its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.”). 
The admission of extraneous offenses must not be substantially more
prejudicial than probative.  See id.; Martin v. State, 173
S.W.3d 463, 466 (Tex. Crim. App. 2005).  The probative value of extraneous
offenses is low when the offenses support only noncompelling, undisputed
evidence that has already been submitted.  Montgomery, 810 S.W.2d at
390.  

          As
we explained in Alami,

Once appellant makes a rule 403 objection, the trial
court must weigh the probative value of the evidence to determine if it is
substantially outweighed by its potential for unfair prejudice.  A rule 403
balancing test includes the following factors:  (1) the inherent probative
force of the proffered item of evidence along with (2) the proponent’s need for
that evidence against (3) any tendency of the evidence to suggest decision on
an improper basis, (4) any tendency of the evidence to confuse or distract the
jury from the main issues, (5) any tendency of the evidence to be given undue
weight by a jury that has not been equipped to evaluate the probative force of
the evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or merely repeat evidence already
admitted.  The rules of evidence favor the admission of relevant evidence and
carry a presumption that relevant evidence is more probative than prejudicial. 

333
S.W.3d at 889 (citations omitted); see Sanders v. State, 255 S.W.3d 754,
760 (Tex. App.—Fort Worth 2008, pet. ref’d) (“Unfair prejudice arises from
evidence that has an undue tendency to suggest that a decision be made on an
improper basis, commonly an emotional one.”).

          At
trial, the State presented a surveillance tape of the robbery at issue in this
case, but the towel over appellant’s head hid his face from view.  Appellant
challenged Kilgore’s and Bradshaw’s identifications of him as the robber during
their testimony and, eventually, in his closing argument.  Thus, the testimony
of other victims of the extraneous crimes, who identified appellant as the man
who had also robbed them in a quite similar way to how he robbed Kilgore, had substantial
probative value.  The evidence about the extraneous offenses focused, rather
than distracted, the jury on the main issue in the case:  whether appellant was
the person who committed the crime against Kilgore.  See Alami, 333
S.W.3d at 889.  Also, the limiting instruction that the trial court gave with
the testimony helped to ensure that the jury would not be confused by the
evidence or use it for an improper purpose.  See Burton, 230 S.W.3d at 851. 
We hold that the trial court did not abuse its discretion by following the
presumption to admit relevant evidence and by determining that the evidence of
the extraneous offenses was not substantially more unfairly prejudicial than
probative.  See Tex. R. Evid. 403; Allen, 202 S.W.3d at 367.

          For
all of these reasons, we overrule appellant’s only point.

Conclusion

          Having
overruled appellant’s point, we affirm the trial court’s judgment.

 

 

 

                                                                             TERRIE
LIVINGSTON

                                                                             CHIEF
JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT, J.; and WILLIAM
BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

 

DAUPHINOT, J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED: 
August 25, 2011

 




 









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00145-CR

 

 


 
 
 WILLIE CHARLES PRICE, JR.
 A/K/A WILLIE C. PRICE, JR.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM CRIMINAL
DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

DISSENTING
OPINION

----------

Respectfully,
I write separately because I do not understand the majority opinion to have
addressed the issues raised by Appellant.

Appellant
argues that the trial court erred by admitting evidence of extraneous offenses
because Appellant did not place identity in issue beyond the degree to which
the State placed identity in issue.  The majority addresses Appellant’s point
by reiterating the questions Appellant asked regarding witnesses’ ability to
view the actor and questions regarding the photo lineup.  Appellant, however, does
not argue that he did not mention those matters.  Appellant argues that he did
not go beyond the questions raised by the State on direct examination.  That
is, Appellant argues that the State cannot raise the issue of identity in order
to make extraneous offenses admissible to prove identity, and a defendant who
only repeats the questions raised by the State does not open the door to make
admissible evidence of extraneous offenses.

The
majority does not explain the extent to which the State raised the issue of
identity, nor does the majority explain how Appellant went beyond the State’s
questioning the bases of witnesses’ identification in order to open the door to
extraneous offenses.  The majority also does not explain, except for a mention
in a footnote, how the extraneous offense evidence resolved any questions of
identity.  

As
the Texas Court of Criminal Appeals has discussed, 

The
general rule is that the defendant is to be tried only for the offense charged,
not for any other crimes or for being a criminal generally.  However, evidence
of extraneous acts of misconduct may be admissible if (1) the uncharged act is
relevant to a material issue in the case, and (2) the probative value of that
evidence is not significantly outweighed by its prejudicial effect.  Because
the propensity to commit crimes is not a material fact in a criminal case, Rule
404(b) explicitly prohibits the admission of uncharged acts to prove conduct in
conformity with a bad character.

One
of the main rationales for admitting extraneous-offense evidence is to prove
the identity of the offender.  Here, the theory of relevancy is usually that of
modus operandi in which the pattern and characteristics of the charged
crime and the uncharged misconduct are so distinctively similar that they
constitute a “signature.”  Usually, it is the accretion of small, sometimes
individually insignificant, details that marks each crime as the handiwork or modus
operandi of a single individual.  No rigid rules dictate what constitutes
sufficient similarities; rather, the common characteristics may be proximity in
time and place, mode of commission of the crimes, the person’s dress, or any
other elements which mark both crimes as having been committed by the same
person.  But if the similarities are “generic,” i.e., typical to this
type of crime, they will not constitute a “signature” crime.  Sometimes,
however, the “signature” is one unique characteristic.  For example, suppose
that three bank robberies are committed over a four-year period in different cities
in which the robber used an antique silver crossbow.  This scenario is so
unusual that it is highly likely that each robbery was committed by the same
person using the same antique silver crossbow.  This is “the mark of Zorro”
mode of proving identity; it is a remarkably unusual fact, in which a single
detail suffices to establish identity.[7]

The
burden of showing admissibility rests upon the proponent of the evidence of
extraneous offenses.[8] 
As the Texas Court of Criminal Appeals has explained,

In Jones, we
concluded that, even though the state had the burden of proving guilty intent
and identity, the state could not permissibly use extraneous offenses as
circumstantial evidence on these issues where the state had uncontroverted
direct evidence on the issue of identity and guilty intent could be inferred
from the act itself.  In that type of situation, the prejudicial effect of the
evidence far outweighs its relevance to any issue in the case; and the evidence
of the extraneous offense serves only to establish the accused’s bad character.[9]

Here,
Appellant argues that the State delved into the witnesses’ ability to observe
the actor and the degree to which their testimony regarding identification had
been influenced.  This is what a good lawyer does.  If the defense did nothing
but repeat what the State had already proved, how did Appellant challenge the
witnesses’ identification and thereby open the door for proof of extraneous
offenses?  I do not understand how the majority opinion explains the answer to
this question.  If Appellant did so challenge and undermine the validity of the
witnesses’ identification, how did the State as proponent of the evidence of
the extraneous offenses satisfy its burden to show admissibility?

True,
the majority mentions in a footnote that the offenses at trial and the
extraneous offenses were all committed by a black man.[10] 
They were committed in convenience stores during early morning hours of “dates
near the date of the offense at issue here.”[11]  So
far, it is difficult to perceive how the majority construes this evidence as a
signature motive, opportunity, intent, preparation, plan, knowledge, identity,
or absence of mistake or accident.  The majority mentions a towel on Appellant’s
head[12] and
on the man’s head in the extraneous offenses but does not provide any
discussion.[13]  Additionally,
Appellant carried a crowbar.  The majority mentions in the footnote that the
man or men in the extraneous offenses carried a weapon.[14]  In
one offense, the perpetrator carried a knife, in one, he carried a steel pipe,
and in one, he carried a crowbar.

“Faced
with an objection, the proponent of such evidence must satisfy the trial court
that the extraneous act has relevance apart from its tendency to prove
character conformity.”[15] 
Except for the aside in the footnote, I do not understand how the majority
opinion addresses whether the State satisfied this obligation.

For
these reasons, I cannot join the majority opinion.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

 

PUBLISH

 

DELIVERED:  August 25, 2011

 









[1]See
Tex. Penal Code Ann. § 29.03(a)(2) (West 2011).





[2]See
Tex. R. Evid. 403, 404(b).





[3]Even
when identity is raised as an issue, extraneous offenses are usually admissible
only if the offenses are so similar to the charged offense as to illustrate the
defendant’s distinctive and idiosyncratic manner of committing criminal acts.  See Page
v. State, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); Owens v. State,
827 S.W.2d 911, 914 (Tex. Crim. App. 1992); Karnes, 127 S.W.3d at 190; see
also Segundo, 270 S.W.3d at 88 (explaining that the common characteristics
to show a link between the extraneous and charged offenses may be proximity in
time and place, mode of commission of the crimes, the person’s dress, or any
other elements that mark both crimes as having been committed by the same
person).  The dissenting opinion, however, fails to recognize that in
appellant’s concise brief, he does not contend that the extraneous offenses
that the trial court admitted are not sufficiently similar to the offense in
this case to show a connection between all of the crimes.  We note that the
three witnesses of the extraneous offenses testified that all of the offenses
were committed by a black man and occurred in convenience stores during early
morning hours of dates near the date of the offense at issue here.  All were
committed by a man with a towel over his head who was carrying a weapon (in two
of the three extraneous offenses, the weapon was a crow bar or steel pipe). 
All three witnesses identified appellant at trial as the perpetrator of the
offenses.





[4]As
most cross-examinations would, appellant’s cross-examinations of the State’s
witnesses related to factual matters that were similar to those elicited during
direct examination.  Appellant’s counsel, however, did not “only repeat[] the
questions raised by the State.”  Dissenting Op. at 2.  The manner of the
State’s questioning was focused on ultimately producing a positive
identification of appellant as the robber.  Appellant’s counsel’s questioning,
as described below, was focused on creating doubt about that identification.





[5]In
contrast to these questions, the State asked Kilgore whether he had been able
to get a “clear” and “good” look at appellant, and Kilgore testified that he
had.





[6]Appellant
objected to the evidence under rule 403 at trial.  The extent of appellant’s
argument on appeal regarding rule 403 states, “Under Texas Rule[] of Evidence
403 . . . , the admission of not one, but three extraneous robberies was error
and effectively, despite the trial Court’s [limiting] instruction, presented
character conformity evidence and substantially prejudiced and harmed
[a]ppellant.”





[7]Segundo
v. State, 270 S.W.3d 79, 87–88 (Tex. Crim. App. 2008) (footnotes omitted), cert.
denied, 130 S. Ct. 53 (2009).





[8]Montgomery
v. State, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh’g).





[9]Albrecht v. State, 486 S.W.2d 97, 101
(Tex. Crim. App. 1972).





[10]Majority
op. at 5 n.3.





[11]Id.





[12]Id.
at 2.





[13]Id.
at 5–6 n.3.





[14]Id.





[15]Feldman
v. State, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002) (citing Santellan v.
State, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997), and McFarland v.
State, 845 S.W.2d 824, 837–38 (Tex. Crim. App. 1992), cert. denied,
508 U.S. 963 (1993), overruled on other grounds by Bingham v.
State, 915 S.W.2d 9 (Tex. Crim. App. 1994)).