COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00312-CR

 

 


 
 
 Haywood
 Henderson
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 396th District
 Court
  
 of
 Tarrant County (1210389D)
  
 November
 21, 2012
  
 Opinion
 by Chief Justice Livingston
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS

 

 

 

 

By_________________________________

   
Chief Justice Terrie Livingston

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00312-CR

 

 


 
 
 Haywood Henderson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 396th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
two issues, appellant Haywood Henderson appeals his felony conviction for
driving while intoxicated (DWI).[2]  Appellant contends that
the trial court erred by denying his request to judicially notice the language
of a section of the administrative code and by overruling his objection to part
of the State’s closing argument concerning his guilt.  We affirm.

Background
Facts

          One
afternoon in August 2010, Fort Worth Police Department (FWPD) Officer Chris
Daniels was patrolling the western part of Fort Worth.  Officer Daniels saw appellant
driving a car that had an expired registration sticker, so Officer Daniels
conducted a traffic stop.  Appellant did not drive too fast, weave, brake
improperly, or run stop signs in the approximately five to ten seconds that
Officer Daniels watched appellant’s driving.

          When
Officer Daniels asked to see appellant’s driver’s license, appellant gave
Officer Daniels a credit card.  Appellant was coherent, but Officer Daniels
noticed a strong smell of an alcoholic beverage coming from appellant’s car or
his breath.  Officer Daniels also saw that appellant had bloodshot and watery
eyes and used “slurred, thick, [and] kind of loud speech.”[3] 
Officer Daniels asked appellant if he had been drinking alcohol, and appellant
responded that he had not had any beers since the previous night.  Appellant
conceded, however, that he had beers inside his car.  When appellant got out of
the car, Officer Daniels still smelled alcohol on him.

          Appellant
performed field sobriety tests.  According to Officer Daniels, appellant showed
six out of six signs of intoxication on the horizontal-gaze-nystagmus test, four
out of eight signs on the walk-and-turn test, and three out of four signs on the
one-leg-stand test.  Officer Daniels arrested appellant and placed him in the
backseat of the patrol car.  When Officer Daniels searched appellant’s car, he
found two twenty-four-ounce beer cans in the car that were mostly empty.

          In
the patrol car, appellant was able to take his handcuffs from behind him and
bring them underneath his legs to the front of his body, at which time he
reached his cell phone and called his wife and his sister.  Appellant
volunteered to take a breath test, and Officer Daniels took him to the Tarrant
County Sheriff’s Office, where Officer Daniels gave appellant a statutory
warning about the test.  Appellant blew into a breathalyzer machine two times,
and the machine registered his alcohol concentration at .245 and .239, each of which
is about three times the legal limit.[4]

          A
grand jury indicted appellant for DWI.  The indictment contained paragraphs
alleging that he had been previously convicted for DWI twice and had also been
convicted for committing two felony offenses.[5]  Appellant pled not
guilty.  At trial, Officer Daniels conceded that appellant was not “falling
down drunk” but explained that he had based his arrest of appellant on his
performance of the field sobriety tests; his unsteady balance; his bloodshot,
watery, and heavy eyes; his slurred and loud speech; and the “strong odor of an
alcoholic beverage coming from his person.”  Officer Daniels also stated, among
other facts, that people may have natural nystagmus without drinking alcohol;
that he took seventy-three seconds to complete the horizontal-gaze-nystagmus
test, which should normally take less time; that taking too long to conduct
that test may induce nystagmus; that appellant did not have vertical nystagmus
(which would have indicated that appellant was “very intoxicated”); that he was
not able to record the statutory breath-test warnings that he gave to
appellant; and that appellant was coherent and retained his fine motor skills
during his detention.

          The
jury convicted appellant.[6]  Appellant pled true to
the habitual felony offender notice in the indictment, and after the parties
presented evidence concerning his punishment, the trial court sentenced him to
thirty years’ confinement.  He brought this appeal.

Judicial Notice

          In
his first issue, appellant contends that the trial court erred by denying his
request to take judicial notice of the contents of title 37, section 221.9 of
the administrative code (section 221.9) as that section existed on the date of his
arrest.  During the State’s initial questioning of Officer Daniels, he
testified that he had received training in detecting signs of intoxication,
that he was qualified to investigate DWIs, that he had become certified at some
point to administer field sobriety tests, that the FWPD did not require him to annually
update that certification, and that he had maintained the certification.  On
cross-examination, Officer Daniels testified that he had completed field
sobriety training in 2006.  He said, however, that he had not updated that
certification and that he was not aware that the Texas Commission of Law
Enforcement Officer Standards and Education (TCLEOSE) required recertification
in conducting field sobriety tests every two years.  During the
cross-examination by defense counsel, the following exchanges occurred:

          Q.  You are aware of the fact that TCLEOSE says
you have to get certified every two years?

          A.  No.

          . . . .

          Q. . . .  Isn’t it true, Officer Daniels,
you’re supposed to recertify every two years?

          . . . .

          [A.]  I’m not aware of that. . . .

          . . . .

          Q.  Would it be asking too much of you to
verify that you are supposed to recertify every two years?

          A.  I wasn’t aware of that.  If that is, in
fact, the rule, I wasn’t aware of that.

          Q.  Okay.  Let me ask you this.  If that was .
. . in fact, the rule, . . . you were not certified, were you?

          A.  It would depend on what the criteria is for
the certification.  If routine practice of the DWI [field sobriety tests] is
sufficient enough for certification, then, yes, I conduct [DWI tests] fairly
often.

          . . . .

          Q.  And if TCLEOSE says you’re supposed to
requalify every two years, on August 16th, 2010, you were not certified, were
you, if that’s the case?  If that’s the rule?

          A.  It would depend on the criteria for the recertification. 
I’m not sure what that criteria is.

          On
redirect-examination, Officer Daniels said that he was not a field sobriety
testing “practitioner” but rather simply administered field sobriety tests
(although Officer Daniels had previously testified that he was a practitioner),
that he had never claimed to hold a practitioner’s certificate, that he had
never learned in his training about a recertification requirement for
administering field sobriety tests, and that he did not need a practitioner’s
certificate to testify about field sobriety tests.  Upon further
cross-examination, Officer Daniels conceded that he did not know what a field
sobriety testing “practitioner” was.

          After
all of the State’s witnesses had testified, a prosecutor asked the trial court
to take judicial notice that section 221.9, which concerned field sobriety
testing certifications, had been repealed as of July 14, 2011 (which was a week
before the trial occurred).  Appellant objected to the State’s request on the
ground that his crime occurred before the repeal date.  The State withdrew its
request, but appellant then asked the court to take judicial notice of the
language of section 221.9 before it was repealed, including that a standardized
field sobriety practitioner was required to recertify every two years.[7] 
Appellant contended that if the trial court did not take judicial notice of
section 221.9, the jury would be left with a “false and misleading
impression” about whether Officer Daniels was required to recertify.  After
prosecutors and appellant’s counsel offered arguments concerning whether
Officer Daniels was a “practitioner” who was subject to section 221.9’s
requirements, the trial court denied appellant’s request for judicial notice,
stating,

I think the fact that you guys have spent 15 minutes arguing
back and forth about what the law is, is a prime example of when the Court, in
its discretion, does not have to take judicial notice of particular laws
because there is apparently wide disagreement as to what the law is and whether
it applies to the individual officer in this case, which would then fall to
either party to provide evidence of, instead of the Court taking judicial
notice of.

          So I’m going to deny your request to take judicial
notice of section 221.9 . . . .

          Appellant
asserts that the trial court erred by denying his request to take judicial
notice of section 221.9 as it existed on the date of his offense.  Rule of
evidence 204 states in part, “A court upon its own motion may, or upon the
motion of a party shall, take judicial notice of . . . the
codified rules of the agencies published in the Administrative Code. . . . 
The court’s determination shall be subject to review as a ruling on a question
of law.”  Tex. R. Evid. 204.

Even
if the trial court erred by not taking judicial notice of the contents of
section 221.9 as of the date of appellant’s offense, unless appellant has been
harmed by that error, we must still affirm the trial court’s judgment.  See Walker
v. State, 300 S.W.3d 836, 852 (Tex. App.—Fort Worth 2009, pet. ref’d).  When
error is not of a constitutional dimension, rule of appellate procedure 44.2(b)
applies.  See Tex. R. App. P. 44.2(b).  Under rule 44.2(b), any
nonconstitutional “error, defect, irregularity, or variance that does not
affect substantial rights must be disregarded.”  Id.

A
substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury’s verdict.  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  Conversely, an
error does not affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon
v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  In making this determination, we
review the record as a whole, including any testimony or physical evidence
admitted for the jury=s consideration, the nature
of the evidence supporting the verdict, and the character of the alleged error
and how it might be considered in connection with evidence in the case.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider
the jury instructions, the State=s
theory and any defensive theories, whether the State emphasized the error,
closing arguments, and even voir dire, if applicable.  Id. at 355–56.  “[T]he
proper inquiry is whether the trial court’s error . . . substantially
swayed or influenced the jury’s verdict, or whether we are left in grave doubt
as to whether [the error] substantially swayed or influenced the jury’s
verdict.”  Russell v. State, 113 S.W.3d 530, 550 (Tex. App.—Fort Worth
2003, pet. ref’d).

Appellant
admits that Officer Daniels’s testimony about appellant’s performance on
standardized field sobriety tests was properly admitted even if Officer Daniels
was not certified as a practitioner at the time of the tests.[8]
 But appellant contends that he was harmed by the trial court’s refusal to
judicially notice section 221.9 because the court’s doing so could have
impacted the jury’s view of Officer Daniels’s credibility.  Specifically,
appellant argues, “The field sobriety tests administered by Officer Daniels
were a vital part of the State’s case. . . .  Officer Daniels’[s]
credibility was therefore critical.  The trial court’s ruling deprived
Appellant, and the jury, of important information that would have adversely
impacted Officer Daniels’[s] credibility.”

We
are unconvinced that the trial court’s judicial notice of section 221.9 was
likely to affect jurors’ views of Officer Daniels’s credibility in the sense of
raising doubts about his truthfulness, as appellant argues in his brief.  The
portions of Officer Daniels’s testimony that we have quoted above demonstrate
that he was unaware of any biennial recertification requirement, not that he
affirmatively denied that such a requirement existed.  Appellant concedes in
his brief that Officer Daniels did not “appear to know what recertification
would entail.”  Thus, while judicial notice of section 221.9 could have shown
that Officer Daniels was unaware of a recertification requirement that he did
not comply with, such judicial notice was not likely to indicate to jurors that
he lied about the requirement or was not generally truthful.

Also,
we reject appellant’s argument that the trial court’s taking judicial notice of
section 221.9 “had the potential to undermine jurors’ opinion[s] of Officer
Daniels’[s] expertise in the area of field sobriety testing.”  The record does
not reflect what comprised the recertification process, so there were no facts
presented to the jury to establish that by recertifying, Officer Daniels would
have obtained any information or technique related to field sobriety tests that
he had not already learned and was not already applying in his DWI
investigations.  Thus, instead of undermining jurors’ opinions of Officer
Daniels’s expertise in field sobriety testing, judicial notice of section 221.9
was more likely to merely lessen jurors’ opinions of his expertise in the
certification process, which did not strongly correlate to the issue of
appellant’s guilt.

          Finally,
appellant concedes that the evidence of his guilt was “substantial.”  The record
supports this concession.  Tarrant County Sheriff’s Office Detention Officer Ty
Gregory testified that he had been operating breathalyzer machines for two and
a half years, that he had been certified to operate the machines after
completing a forty-hour class, and that he had administered appellant’s breath
test in August 2010.  Officer Gregory said that before he had given appellant
the breath test, he had watched appellant continually for fifteen minutes to
ensure that appellant had not burped or regurgitated alcohol, which could
affect the results of the test.  Officer Gregory explained that the machine was
working properly on the date that appellant used it and that he had never known
of a breathalyzer machine that had problems.  The machine had correctly tested
a controlled reference sample of alcohol before appellant used the machine.

          Mark
Fondren, a senior forensic chemist with the Tarrant County Medical Examiner’s
Office who is board certified in forensic alcohol toxicology, testified that he
had been managing an alcohol breath testing program for seventeen years and
that when performed correctly, breath tests can be as accurate as blood tests
for measuring alcohol concentrations.  Fondren told the jury about the
scientific theory behind breathalyzer machines, and he opined that breathalyzers,
which are used in “every county in the state of Texas,” reliably measure the
alcohol in a person’s body.  Fondren confirmed that Officer Gregory was
certified as a breathalyzer operator on the date of appellant’s breath test, and
he stated that the particular machine that appellant had used had been
certified by the scientific director of the Department of Public Safety (DPS). 
In fact, Fondren had tested the machine that appellant used (which had been in
service between a year and eighteen months) in both July and August 2010, and
DPS had also randomly checked the machine to ensure that it was working
properly.  The machine was last tested four days before appellant used it, and it
passed tests on five occasions within ten days after appellant used it, but its
source of infrared energy was “out” by August 26, 2010, which was ten
days after he used it.[9]  Fondren testified that
if the machine’s infrared energy source had been malfunctioning when appellant
used the machine, the machine would not have been operable.  Fondren stated
that appellant’s breath samples registered alcohol concentrations of .245 and
.239.  He explained that he expects two breath samples to measure at different
levels of alcohol concentration.

          Fondren
opined that an individual’s outward appearance may be a poor indicator of his
alcohol concentration because “[s]ome individuals at very high levels of
alcohol look very good,” particularly when they have had significant experience
with drinking alcohol.  When appellant’s counsel asked Fondren whether he would
expect to see outward signs of intoxication in a person who has a high alcohol concentration,
Fondren said,

[I]n a large group, yes.  We do categorize various
signs.  Whether or not one individual shows that sign . . . ,
I don’t know.  The only way to know that is to dose an individual and determine
that.

          . . . .

          With a large number of people, . . . you
would expect to see some of those individuals show those signs.

Fondren
explained that “[w]ithout a doubt,” breath tests are a more reliable measure of
intoxication than looking at an individual’s outward signs of intoxication.  Fondren
opined on cross-examination that for a 220-pound person to reach an alcohol
concentration of .24 in three hours of drinking alcohol, the person would need
to consume sixteen to eighteen twelve-ounce beers in that three-hour period.

It
is relevant to our harm analysis, although not necessarily dispositive, that
even if the trial court’s judicial notice of section 221.9 could have affected
Officer Daniels’s credibility, the jury could have convicted appellant based
only on these facts, which are unrelated to his performance on field sobriety
tests.  See Tex. Penal Code Ann. § 49.01(2)(B) (stating that a
person becomes intoxicated by having an alcohol concentration .08 or more); Rubio
v. State, 241 S.W.3d 1, 3 (Tex. Crim. App. 2007) (“Evidence of the
defendant’s guilt should be considered, but that is only one factor in the [harm]
analysis.”); Bagheri v. State, 119 S.W.3d 755, 762 (Tex. Crim. App.
2003) (explaining that the definitions contained in section 49.01 set forth
alternate means by which the State may prove intoxication); Motilla, 78
S.W.3d at 357–58.

For
all of these reasons, we conclude that even if the trial court erred by not
taking judicial notice of the contents of section 221.9 as of the date of
appellant’s offense, the error did not have a substantial and injurious effect
on the jury’s guilty verdict, and there is therefore no harm.  See Tex.
R. App. P. 44.2(b); King, 953 S.W.2d at 271.  We overrule appellant’s
first issue.

The
State’s Plea for Law Enforcement

          In
his second issue, appellant contends that the trial court erred by overruling
his objection to part of the State’s closing argument concerning his guilt, in
which the following exchange occurred:

          [THE STATE:]  My question to you is, do you
want him at that alcohol level driving next to you?  Do you want him driving on
the same streets that your children are driving on with that alcohol level?

          [DEFENSE COUNSEL]:  I’m going to object.  That’s
improper argument.  Attempts to strike fear into the jury.  Has nothing to do
with this case.

          THE COURT:  Overruled.

          [THE STATE]:  Do you want him driving with that
alcohol level next to your mother or your father, your husband or your wife? 
Of course you don’t.  Driving while intoxicated is a very serious offense.  We
know the repercussions that come from this.  We just want you to hold him
accountable for what he has done.

          We
review a trial court’s ruling on an objection to a jury argument for an abuse of
discretion.  See Lemon v. State, 298 S.W.3d 705, 707 (Tex. App.—San
Antonio 2009, pet. ref’d); Montgomery v. State, 198 S.W.3d 67, 95 (Tex. App.—Fort
Worth 2006, pet. ref’d).  To be permissible, the State’s jury argument must be
a summation of the evidence, a reasonable deduction from the evidence, an
answer to an argument of opposing counsel, or a plea for law enforcement.  Brown
v. State, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 2075 (2009); Alami v. State, 333 S.W.3d 881, 891–92 (Tex. App.—Fort
Worth 2011, no pet.).

          Appellant
contends that a closing argument that “asks the jurors to abandon their
objectivity and place themselves into the shoes of the victim . . . is
improper.”  In this case, however, there was no discernible victim, and the
State did not reference one, so the cases cited by appellant are
distinguishable.  See, e.g., Boyington v. State, 738 S.W.2d 704,
709 (Tex. App.—Houston [1st Dist.] 1985, no pet.) (holding that a prosecutor’s
closing argument on punishment was improper when the prosecutor stated in part,
“Put yourself in the place of that Anderson family and imagine that was your
family that was firebombed in the middle of the night.  Imagine that it was
your son that ha[d] his legs on fire. . . .  Would you want
mercy shown?”).

          The
State argues that under the rationale we recently expressed in Burton v.
State, the argument in this case, instead of being an improper invitation
for jurors to place themselves in the shoes of a victim, was a proper plea for
law enforcement.  No. 02-11-00144-CR, 2012 WL 1034920, at *5–8 (Tex. App.—Fort
Worth Mar. 29, 2012, no pet.) (mem. op., not designated for
publication).  In Burton, during the prosecutor’s closing argument in
the guilt phase of a trial for DWI, the prosecutor said in part, “What harm are
we trying to prevent with DWIs?  We’re trying to prevent four Brock
cheerleaders from getting killed.  We’re trying to prevent somebody from
driving one way on I–35.”  Id. at *5 (footnote omitted).  After
discussing several decisions from the court of criminal appeals that approved of
similar arguments, we held that because the argument “informed the jury that by
enforcing the DWI law, the State was seeking to prevent DWI-related deaths,” it
could have reasonably been construed as a proper plea for law enforcement.  Id. at *6–8;
see Nichols v. State, 504 S.W.2d 462, 465 (Tex. Crim. App. 1974)
(holding that it was “nothing more than a plea for law enforcement” when the
prosecutor argued in a DWI case, “I ask you to find the defendant guilty and
all those like him because we are all going to get in our cars, and we are
going to go home.”); Strahan v. State, 172 Tex. Crim. 478, 479, 358
S.W.2d 626, 627 (1962) (concluding that a prosecutor properly appealed for law
enforcement in a DWI case when the prosecutor urged the jury to think of people
who travel on highways and stated, “When you and your family are on these
highways driving you can’t help but sometimes wonder if some drunk driver is
going to hit you, run over you[,] and kill you.”).

          Based
on the rationale and precedent discussed in Burton, we hold that the
trial court did not abuse its discretion by overruling appellant’s objection to
the State’s closing argument in this case because the argument may be
reasonably construed as a plea for law enforcement.  See 2012 WL 1034920,
at *6–8; see also DeBolt v. State, 604 S.W.2d 164, 169–70 (Tex. Crim.
App. [Panel Op.] 1980) (approving of an argument in the guilt phase of a
murder case when the prosecutor stated, “I’m mainly concerned [that the
defendant] is not out among the public, living next door to me or next door to
you or to anybody else.”); 

Rodgers
v. State, 168 Tex. Crim. 386, 387–88, 328 S.W.2d 301, 302 (1959)
(holding that the prosecutor properly pled for law enforcement by arguing in a
DWI case concerning a defendant who was a mail carrier, “[Y]our verdict in this
case will tell . . . whether you are in favor of letting
drunk drivers roam over the highways . . . without fear of being
punished.  You’ll be just as dead, whether you are killed by a drunk mail
carrier or some other drunk.”); Francis v. State, No. 02-05-00046-CR, 2006
WL 2034280, at *2 (Tex. App.—Fort Worth July 20, 2006, pet.
ref’d) (mem. op., not designated for publication) (holding that in the guilt
phase of an aggravated kidnapping trial, the prosecutor properly argued, “I want
you to be careful for some unsuspecting female who might encounter [the
defendant] at a later date.”); Piatt v. State, No. 01-00-00102-CR, 2001 WL 361324,
at *2 (Tex. App.—Houston [1st Dist.] Apr. 12, 2001, no
pet.) (not designated for publication) (“The State’s argument that nobody
should be killed by a drunk driver looking like appellant is a proper plea for
law enforcement.”).  We overrule appellant’s second issue.

Conclusion

          Having
overruled both of appellant’s issues, we affirm the trial court’s judgment.

 

 

 

Terrie Livingston
Chief Justice

 

 

PANEL:  Livingston, C.J.;
Walker and Mccoy, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November 21,
2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. §§ 49.04(a), .09(b)(2) (West Supp. 2012).





[3]At trial, appellant’s wife
testified that he has bloodshot eyes on a regular basis because of irritation
from when he was a welder and from when he cut down trees.





[4]See id. § 49.01(2)(B)
(West 2011).





[5]DWI is a third-degree
felony when a defendant has two prior DWI convictions.  Id. § 49.09(b)(2). 
When a defendant is convicted for a third-degree felony while having two prior,
sequential felony convictions, the defendant faces a term of “life, or for any
term of not more than 99 years or less than 25 years.”  Id. § 12.42(d)
(West Supp. 2012).





[6]Appellant’s indictment
simply alleged that he operated a motor vehicle in a public place while
intoxicated.  The jury charge stated, “‘Intoxicated’ means not having the
normal use of mental or physical faculties by reason of the introduction of
alcohol, or having an alcohol concentration of 0.08 or more.”





[7]See Goains v. State,
No. 09-09-00503-CR, 2011 WL 4537892, at *2 (Tex. App.—Beaumont Sept. 28, 2011,
pet. ref’d) (mem. op., not designated for publication) (explaining that the
2009 version of section 221.9 required recertification for standardized field
sobriety testing every two years), cert. denied, 81 U.S.L.W. 3164 (U.S.
Oct. 1, 2012).  Section 221.9 was repealed in 2011 because training
for standardized field sobriety testing is now included in the “Basic Peace
Officer Course.”  See id. at *3 n.1.





[8]While a practitioner’s
certification in standardized field sobriety testing traditionally qualified an
officer to conduct such tests and to testify about them in court, such a
certification was not required to make an officer’s testimony about the tests
admissible as long as the officer adequately demonstrated through training and
experience that he was qualified to conduct the tests and to testify about them. 
See Emerson v. State, 880 S.W.2d 759, 769 (Tex. Crim. App.), cert.
denied, 513 U.S. 931 (1994); Kerr v. State, 921 S.W.2d 498, 502
(Tex. App.—Fort Worth 1996, no pet.); see also Goains, 2011 WL 4537892,
at *2.  Officer Daniels became a certified peace officer in 2006.  While
training in the police academy, using standardized field sobriety tests, he
examined up to forty people who had consumed various amounts (or no amount) of
alcohol to determine whether they were intoxicated.  In 2009, he attended an
eight-hour DWI training seminar.  Officer Daniels had investigated
approximately twenty DWIs when he testified.





[9]Fondren explained that
such sources go “out about every 18 months or so, which is why [he schedules]
preventative maintenance.”