

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00160-CR

CHASE ROBERT DILG, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1115192D, Honorable David Cleveland, Presiding

January 29, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Chase Robert Dilg, appellant, appeals his conviction for sexual assault. His five issues involve the sufficiency of the evidence supporting his conviction and the admission of evidence purportedly in violation of Rules 403 and 404 of the Texas Rules of Evidence. We affirm.

*Issue One – Sufficiency*

Appellant contends that the evidence supporting his conviction is insufficient because "there was no physical evidence that [the victim] was sexually assaulted: no

'rape' kit, no DNA, no bloody sheets, no public [sic] hair of Appellant or semen on her sheets, no screams for help, inconsistent version of what happened to her, no alleged confrontation with her 'attacker,' who she saw on a regular basis, for five weeks, no counseling, nothing that is consistent by the victim of sexual assault." We overrule the issue.

We review the sufficiency of the evidence under the standard discussed in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Brooks v. State,* 323 S.W.3d 893, 902 (Tex. Crim. App.2010).

Next, appellant was charged with:

> intentionally or knowingly cause the penetration of the anus of Kelly Easter, by inserting defendant's penis in Kelly Easter's anus without the consent of Kelly Easter, by knowing that, Kelly Easter, did not consent and knowing, Kelly Easter was unconscious or physically unable to resist [or]

> intentionally or knowingly cause the penetration of the anus of Kelly Easter, by inserting defendant's penis in Kelly Easter's anus without the consent of Kelly Easter, by knowing that, Kelly Easter did not consent and was unaware that the sexual assault was occurring

Furthermore, the particular criminal statute of which he was accused of violating obligated the State to prove that the accused "intentionally or knowingly … cause[d] the penetration of the anus or sexual organ of another person by any means, without that person's consent." TEX. PENAL CODE ANN. § 22.011(a) (West 2011). The provision also provided that a "sexual assault under Subsection (a)(1) is without the consent of the other person if . . . the other person has not consented and the actor knows the other person is unconscious or physically unable to resist . . . [or] the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring." *Id.* § 22.011(b). We finally note that the testimony of the complainant

alone, if believed by the jury, may be sufficient to support the conviction. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2012); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App—Houston [14th Dist.] 2002, pet. ref'd). In other words, it need not be corroborated.

We find the following evidence within the appellate record. Easter testified that 1) she fell asleep but later awoke with a "shooting pain in [her] rectum," 2) she had been sleeping on her stomach and could tell that somebody was on top of her, 3) appellant's penis had penetrated her anus and she removed appellant from atop her, 4) appellant began putting on his clothes while apologizing, 5) appellant eventually left her bedroom, 6) she passed out and later awoke the next morning, 7) upon awakening, she went to the bathroom and passed blood from her rectum, 8) she found appellant's ball cap on the pillow next to her pillow on the bed, 9) she confronted appellant who was a friend of her son and who had stayed the night in the house, 10) appellant began apologizing and crying, 11) she did not consent to having a sexual encounter with appellant, 12) she initially told her son that a stranger had raped her but later disclosed it had been appellant, and 13) she received treatment to help heal her rectum. We hold that this is some evidence upon which jurors could rationally conclude, beyond reasonable doubt, that appellant committed sexual assault as alleged in the indictment and proscribed by statute.

That the victim's testimony contained contradictions, that she delayed in reporting the assault, that she purportedly acted in a manner inconsistent with being assaulted, or that physical evidence often accompanying a rape may not have been collected or discovered does not require us to hold differently. Those matters merely created issues

3

of fact and credibility for the jury to resolve. *See Montgomery v. State,* No. 07-12-00070-CR, 2013 WL 5782920, 2013 Tex. App. LEXIS 13141 (Tex. App.—Amarillo October 22, 2013, no pet.). By its verdict, the jury opted to believe Easter, and we are prohibited from simply substituting our own perceptions of the evidence for those of the jury. *Id.*

### *Issues Three and Five – Texas Rule of Evidence 404(b)*

In his third and fifth issues, appellant contends the trial court abused its discretion by admitting the testimony of Blackmon and Tyes, two other purported victims of assaults committed by appellant. Allegedly, they were accosted by appellant in Easter's home during the spring of 2008 while they were asleep or intoxicated.[1] Appellant believed the evidence inadmissible because it "did not meet the test for admission under 404(b) and should have been excluded by the trial court" and it "only prejudiced the Appellant and truly denied him due process under the law." We overrule the issue.

The pertinent standard of review is one of abused discretion. *Davis v. State,* 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Under this standard, the trial court's ruling will be upheld if it falls within the "zone of reasonable disagreement." *Id.*; *Morales v. State*, No. 07-12-00464-CR, 2014 WL 108770, 2014 Tex. App. LEXIS 312 (Tex. App.—Amarillo January 10, 2014, no pet. h.); *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.).

---

[1] Blackmon testified that she was friends with Easter's son (Ryan) and that it was common to hang out and sometimes spend the night at Easter's house. She also stated that in late spring of 2008 and while at Easter's house, appellant started kissing her and licked her face as she lay on Ryan's bed. Appellant was told to stop. Later, as she slept on the bed, appellant began "rubbing [her] side and [her] butt and kissing . . . in the same areas." At that point, she noticed that appellant had pulled her pants down and was kissing her "bare bottom." He was again told to stop. In turn, Tyes testified that around May of 2008, she was at Easter's house. Appellant was there as well. While in a state of inebriation and laying down in one of the bedrooms, she felt appellant touch and penetrate her vagina with his finger.

4

Next, evidence of a person's bad character is generally inadmissible for the purpose of showing that he acted in conformity therewith. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002). However, it may be received for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. TEX. R. EVID. 404(b); *De La Paz v. State*, 279 S.W.3d 336, 342-43 (Tex. Crim. App. 2009). Additionally, the exceptions listed in Rule 404(b) are not exclusive or exhaustive. *De La Paz v. State*, 279 S.W.3d at 343. With this in mind, we again note that here the State had to prove that appellant engaged in the conduct without the victim's consent. And, when the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without consent. *Martin v. State*, 173 S.W.3d 463, 466 n.1 (Tex. Crim. App. 2005).

Here, appellant sought to put the issue of consent into question and began his effort via his defense counsel's opening statement. Therein, the attorney stated:

> What you're going to hear is that [appellant] goes in there to wake [Easter] up to get some cigarettes. They all smoke there on the back porch, six kids. And she says, Oh, that feels good. And from there, not only did she go along with it she took his penis out of his pants and performed oral sex on him. And I'm sorry this sounds so graphic, but she actually took a lube out. She has lube[,] some kind of lube in her dresser hidden somewhere. She gets that out and puts it all over his penis so they can have anal sex. And they do. And then there's no crying, no running from the room. He takes that pack of Virginia Slims and walks right out of that bedroom and sits on the back porch with her son and the other kids and has a cigarette and drinks a beer. He didn't do anything wrong. It may not be something everybody likes, but he didn't - - he certainly didn't attack somebody. Had he attacked somebody, obviously she is going to come out screaming and yelling, [']He just attacked me.['] That doesn't happen. He doesn't go running home.

The theme was continued by appellant during the cross examination of Easter. For instance, she was asked such things as:

1) Q. Do you recall [appellant] coming in to your room about 30 minutes after you went to bed and asking you for some cigarettes?

A. No.

2) Q. Do you remember him shaking you or rubbing your shoulder and you telling him that feels good?

A. No.;

3) Q. Do you remember removing his penis from his pants and performing oral sex on him?

A. No, I did not;

4) Q. Do you recall getting lubricant? First of all, do you have lubricant in your bedroom?

A. I did;

5) Q. And it's sort of in a hidden place, isn't it? You don't just leave it out for everybody to see, do you?

A. No;

6) Q. Did you take that lubricant and rub it on his penis?

A. No;

7) Q. Did you have regular sexual intercourse with him before you did the anal sex thing?

A. No.

The aforementioned circumstances illustrate that appellant raised the issue of consent and opened the door to the admissibility of the extraneous offenses, or so the trial court could have reasonably concluded. Therefore, the decision to admit evidence

6

tending to rebut appellant's defense of consent and illustrate his intent to engage and his pattern of engaging in sex with his victims while they were in a state of mind impeding their ability to consent was not an abuse of discretion.

*Issues Two and Four – Texas Rule of Evidence 403*

As for the remaining issues, they concern the application of Texas Rule of Evidence 403 and whether the decision to admit the testimony of Blackmon and Tyes violated it. We overrule these issues as well.

As previously stated, the pertinent standard of review is one of abused discretion. *Davis v. State, supra.* Next, Rule 403 of the Texas Rules of Evidence permits the exclusion of otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, among other things. *See* TEX. R. EVID. 403: *Martin v. State*, 173 S.W.3d at 466.

When litigants assert Rule 403 objections, the trial court must undertake a balancing test. The factors it considers include: 1) how compellingly the evidence serves to make a fact of consequence more or less probable; 2) the potential for the evidence to impress the jury "in some irrational but nevertheless indelible way"; 3) the time needed to develop the evidence and whether it was a quantum likely to distract the jury from its consideration of the indicted offense; 4) the proponent's need for the evidence to prove a fact of consequence, and the availability of other probative evidence to help establish this fact. *De La Paz v. State*, 279 S.W.3d at 348-49, *quoting Wyatt v. State*, 23 S.W.3d 18 (Tex. Crim. App. 2000). To them, we also note that the rules of evidence favor the admission of relevant evidence, and relevant evidence carries with it a presumption that it is more probative than prejudicial. *Alami v. State*,

7

333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.). With this in mind, we turn to the record before us.

As previously indicated, appellant placed into dispute the issue of consent. He insinuated that Easter consented to the assault. Furthermore, only two individuals were actually privy to the assault, those individuals being Easter and appellant. So, to a certain extent, the situation could have been characterized as one of "he said, she said." Given Easter's delay in disclosing the assault, the want of physical evidence corroborating her testimony, and appellant's presence at the house on various occasions after the assault and without complaint from Easter, the issue of consent could be viewed as the most pivotal one in the trial. Accordingly, evidence tending to prove non-consent became quite probative. So, the assaults upon both Blackmon and Tyes, the manner of their occurrence, and the latters' similarity to that involving Easter went far in rebuffing the allegation of consent. Again, appellant would approach them without prior notice and while their mental faculties were impaired by either sleep or alcohol. These similarities enabled the trial court to reasonably conclude both that the need for the evidence and its tendency to prove a fact of consequence was compelling.

We also note that the trial court limited the jury's consideration of the evidence to the issue of consent. Thus, it curtailed any potential for the jury to use the extraneous testimony for an improper purpose or render a verdict on a legally impermissible basis. Further, the extraneous evidence involved a crime no more heinous than that for which appellant was indicted, and, therefore, it was not so unrelated or inflammatory as to prevent the jury from considering it for its proper purpose.

As to the time factor, the record reflects that the presentation of the evidence took up approximately 30 minutes of a three day trial. As such, it was not so time consuming as to risk unduly distracting the jury.

The foregoing circumstances lead us to conclude that the decision to admit the evidence over appellant's Rule 403 objection fell within the zone of reasonable disagreement. It being a legitimate exercise of discretion, we cannot change it.

Accordingly, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice


Do not publish.