

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00219-CR

———————————————————

ROY RIOS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1724662

---

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

A jury convicted Appellant Roy Rios of continuous violence against the family and assessed his punishment at 12 years' confinement. During the guilt-innocence phase of trial, the trial court allowed the State to present extraneous-offense testimony that Rios had assaulted the complainant on two previous occasions. In a single point, Rios challenges the admission of that testimony. We will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rios was indicted for continuous violence against the family for two alleged assaults against the complainant, Dee Kennedy, that occurred on July 3, 2021, and March 27, 2022. *See* Tex. Penal Code Ann. § 25.11(a) (providing that a person commits continuous violence against the family if he commits multiple assaults within a 12-month period against a family member, household member, or someone he is dating).

### A. STATE'S EVIDENCE

Kennedy testified that she and Rios began dating in September 2019. They eventually started living together, first at Kennedy's apartment in North Richland Hills and then in a trailer in Fort Worth.

On July 3, 2021, Rios and Kennedy were watching television together when Rios suddenly jumped up and slapped Kennedy on the side of her head. Rios then chased Kennedy around the trailer and punched her in the ribs and headbutted her several times after he caught up to her. Afterwards, Kennedy waited for an

2

opportunity to leave and then ran to the neighbor's house. As Kennedy fled on foot for the neighbor's house, Rios pursued her in his truck. Concluding that he would be less angry if she gave up her flight, Kennedy relented and returned home with Rios.

That night, Rios punched Kennedy multiple times and choked her while the two were lying on their bed. Kennedy fled for the neighbor's house again, and Rios again pursued her in his truck. Rios caught Kennedy in the neighbor's front yard, but Kennedy threw herself on the ground so that Rios could not pick her up and force her into the truck. The neighbor came outside, and Rios fled in his truck.

Two Tarrant County Sherriff's deputies testified concerning the July 3 incident. They described responding to the neighbor's house and finding a visibly shaken Kennedy hiding in the back yard. The officers gathered oral and written statements from Kennedy and took photographs of her injuries showing bruising on her face, hips, and legs.

Kennedy and Rios separated for a time before getting engaged in October 2021 and moving back into the trailer together. On March 27, 2022, Rios "out of the blue" started punching Kennedy again. He punched her in the ribs and stomach numerous times, knocking her to the ground. Shortly after, Rios went to sleep, and Kennedy fled the trailer. Kennedy ran to her neighbor's house, but he would not allow her to come inside, so she hid outside on his property for several hours. After sunset the next day, Kennedy crawled over the fence to another neighbor's house.

A different Tarrant County Sherriff's deputy testified concerning the March 27 incident. He stated that he responded to the neighbor's house and met with Kennedy, who appeared frightened. Kennedy told the deputy that Rios had assaulted her, and the deputy took photographs of her injuries, which showed bruising on her legs, ribs, and foot.

The State also sought to introduce Kennedy's testimony related to two extraneous assaults that she alleged Rios had committed against her in February and June 2020. At a hearing outside the presence of the jury, Kennedy testified about these assaults, and Rios objected to the admission of this testimony, arguing that under Texas Rule of Evidence 403 it was more prejudicial than probative. The trial court overruled this objection and allowed Kennedy to testify as to the extraneous assaults.[1]

Kennedy testified that, in February 2020, she was at her apartment walking toward the bedroom when Rios shoved her from behind. Kennedy fell forward and hit her head on the baseboard of the bed. She sustained a four-inch cut on her scalp that bled profusely. Kennedy did not go to the hospital or get medical attention, and the wound took several weeks to heal.

---

[1]The trial court included an instruction in the jury charge that the jury could not consider evidence of Rios's extraneous bad acts unless it first found beyond a reasonable doubt that he had committed those acts and that it could only consider those bad acts for their "bearing on relevant matters including the state of mind of [Rios and Kennedy] and the previous and subsequent relationship between [them]."

Kennedy further testified that, in June 2020, she and Rios argued about their cat, and he threw lukewarm coffee in her face. She became scared of Rios and decided to quickly leave and go to her daughter's apartment. As she was trying to leave, Rios shoved her head into a piece of exercise equipment near the door. Kennedy then fled and walked three miles to her daughter's apartment.

## B. RIOS'S EVIDENCE

Rios testified, primarily attacking Kennedy's credibility and contending that he had not attacked her but, rather, that she had accidentally injured herself. He explained the four alleged assaults differently than Kennedy:

- As to the February 2020 assault, Rios testified that Kennedy had suffered a cut on her head but that he had not pushed her as she alleged.

- As to the June 2020 assault, Rios testified that moving boxes had been scattered around the house and that he had accidentally knocked into Kennedy while he was getting dressed. This caused her to fall and hit her head.

- As to the July 3, 2021 assault, Rios testified that he and Kennedy were moving a heavy oven into the trailer and that the wooden porch collapsed underneath her. She then fell through a hole in the porch up to her waist, and the oven fell on top of her. Rios contended that this event explained Kennedy's injuries from that day.

- As to the March 27, 2022 assault, Rios testified that he did not attack Kennedy and that he did not know how she sustained those injuries.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A trial court's decision to admit evidence, including evidence of uncharged misconduct, is reviewed under an abuse of discretion standard. *McDonald v. State*,

179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion so long as the decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *Id.* at 380.

Texas Rule of Evidence 404(b) forbids the admission of evidence of extraneous offenses or bad acts at the guilt phase of trial if that evidence is offered to prove only that a defendant committed the charged offense in conformity with a bad character. Tex. R. Evid. 404(b)(1). Rule 404(b) precludes the admission of evidence of a crime, wrong, or act only when it is offered solely to prove a person's character to show that he acted in conformity with that character on a particular occasion. *James v State*, 623 S.W.3d 533, 545 (Tex. App.—Fort Worth 2021, no pet.). However, the Rule allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2).

Article 38.371 of the Texas Code of Criminal Procedure provides one such non-character conformity purpose for admitting extraneous-offense evidence. *James*, 623 S.W.3d at 545. In family-violence prosecutions, Article 38.371 allows "evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence

6

regarding the nature of the relationship" between the accused and the complainant. Tex. Code Crim. Proc. Ann. art. 38.371(b), (c). Thus, "Article 38.371(b) expressly allows extraneous-offense evidence regarding the nature of the relationship between an accused and a complainant" as a valid non-character conformity purpose. *James*, 623 S.W.3d at 545.

Even if the extraneous-offense evidence is admissible under Rule 404(b), it may nevertheless be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *James*, 623 S.W.3d at 546. When considering if evidence is admissible despite a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; Tex. R. Evid. 403. In conducting the balancing test, a court must weigh: (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.).

7

"Probative value" refers to how strongly the evidence serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponent's need for the evidence. *Gigliobianco,* 210 S.W.3d at 641. When a trial court engages in a Rule 403 analysis, there is a presumption favoring the probative value of evidence. *Feldman v. State*, 71 S.W.3d 738, 754–55 (Tex. Crim. App. 2002). Because of this presumption, the party opposing the admission of the evidence bears the burden of demonstrating that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or by the other dangers listed in Rule 403. *James*, 623 S.W.3d at 547.

## III. DISCUSSION

In his sole point, Rios argues that the trial court abused its discretion by allowing Kennedy to testify regarding the February and June 2020 extraneous assaults because that evidence's probative value was outweighed by its prejudicial nature, in violation of Rule 403.[2] We disagree.

---

[2]It is unclear from Rios's appellant's brief whether he also attempts to appeal the trial court's admission of the extraneous-offense assaults under Rule 404(b). To the extent that Rios raises this issue, we overrule it. First, he failed to preserve this error because he did not object to this evidence on Rule 404(b) grounds in the trial court. *See* Tex. R. App. P. 33.1(a) (requiring that, for an issue to be preserved for appellate review, there be a timely and specific objection that was ruled on by the trial court); *Redmond v. State*, 629 S.W.3d 534, 547 (Tex. App.—Fort Worth 2021, pet. ref'd). The only objection he lodged at trial to admission of the extraneous assaults was that they were "more prejudicial than probative" under Rule 403. Further, it is well-settled that Article 38.371(b) provides a valid non-character-conformity purpose

## A.  PROBATIVE VALUE AND STATE'S NEED FOR THE EVIDENCE

Under the first two *Gigliobianco* factors we are to assess the evidence's probative value and importance to the State's case.  210 S.W.3d at 641–42; *James*, 623 S.W.3d at 547.

Here, Kennedy's testimony about the two 2020 assaults had strong probative value because it established the nature of her relationship with Rios and showed a pattern of abuse that spanned for most of their relationship.  *See James*, 623 S.W.3d at 548.

Further, the State had a significant need to provide context for the seeming randomness of Rios's indicted assaults.  Rios testified that he had never assaulted Kennedy and claimed that she had been accidentally injured.  In cross-examining Kennedy, Rios also highlighted the random nature of the indicted assaults, suggesting that there had been no reason for Rios to attack her and that maybe Kennedy had mistakenly attributed her injuries to him.

Thus, the two extraneous assaults (in which Kennedy testified that Rios had pushed her without warning) were highly useful for the State to show that Rios had exhibited a pattern of attacking Kennedy often without warning or apparent

---

for admissibility of extraneous family-violence assaults (like those admitted here) to satisfy Rule 404(b).  *See James*, 623 S.W.3d at 545.

provocation. *See id.* Additionally, evidence of the prior assaults made it less likely that Kennedy had fabricated the indicted assaults. *See id.*

For these reasons, we hold that the probative value and the State's need for the extraneous-offense evidence were strong and weigh in favor of admission. *See id.*

## B. TENDENCY OF EVIDENCE TO SUGGEST DECISION ON IMPROPER BASIS

The third *Gigliobianco* factor asks us to analyze the tendency of the evidence to suggest a decision on an improper basis. 210 S.W.3d at 641–42. The mere fact that evidence is prejudicial does not make it excludable under Rule 403 because "all evidence against a defendant is designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (cleaned up). Instead, Rule 403 is concerned with evidence that is *unfairly* prejudicial. Tex. R. Evid. 403; *Pawlak*, 420 S.W.3d at 811.

When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice. *See Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996); *Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication). In this case, there was little risk of unfair prejudice due to the similarity between the indicted assaults and the extraneous assaults. In fact, the violence used during the extraneous assaults was less prolonged and brutal than that used in the indicted assaults, which involved repeated punching and choking. Moreover, photographs of Kennedy's injuries from the indicted assaults

10

were admitted into evidence, but none were admitted from the extraneous assaults, which also reduced the risk of prejudice.

Furthermore, any risk of improper use of the extraneous evidence was lessened by the limiting instruction in the jury charge. *See James*, 623 S.W.3d at 549; *Norwood*, 2014 WL 4058820, at \*5. We presume that the jury followed the trial court's limiting instructions, and Rios does not attempt to rebut this presumption. *See James*, 623 S.W.3d at 549.

Accordingly, we hold that this third factor does not weigh in favor of exclusion of the extraneous evidence.

## C. TENDENCY OF THE EVIDENCE TO CONFUSE OR MISLEAD THE JURY

The fourth *Gigliobianco* factor asks whether there was any tendency of the extraneous evidence to confuse or distract the jury from the central issues. 210 S.W.3d at 641. A jury might be confused or distracted from central issues if the extraneous evidence consumes an inordinate amount of time to present. *James*, 623 S.W.3d at 550. But any potential confusion is reduced by the use of limiting instructions and the clear communication to the jury that its job was to determine whether the defendant was guilty of only the charged offenses. *See id.*

Here, the only evidence of the extraneous assaults came via Kennedy's testimony. Compared to the evidence of the indicted assaults, the extraneous-assault testimony was short and direct, constituting in total about ten pages of the reporter's record. On the other hand, the evidence of the indicted offenses was more detailed

11

and included the testimony of four State's witnesses and photographs of Kennedy's injuries. This testimony constituted about seventy pages of the reporter's record. Thus, an inordinate amount of time was not spent presenting the extraneous-assault evidence to the jury.

Further, it was clearly communicated to the jury which of the alleged assaults Rios was charged with and stood trial for. Rios was arraigned in front of the jury as to the indicted assaults, and the jury charge clearly instructed the jury that it could convict Rios only upon finding that he had committed the indicted assaults. Further, as already discussed, the charge contained a limiting instruction explaining properly to the jury how it should view the extraneous-assault evidence.

For these reasons, we hold that there was little risk that the jury was confused by the extraneous-assault evidence and that this factor does not weigh in favor of exclusion.

The fifth *Gigliobianco* factor concerns Rule 403's fourth key phrase, "misleading the jury." *Gigliobianco*, 210 S.W.3d at 641. "This factor involves the likelihood that a jury will place too much weight on the evidence for some reason not involving emotion." *James*, 623 S.W.3d at 550.

Here, the extraneous-assault evidence was not the type to mislead a jury. None of the extraneous-assault evidence was scientific or complex, and it consisted solely of Kennedy's lay testimony describing the assaults in a straightforward, factual manner. *See id.*

12

We hold that this factor does not weigh in favor of exclusion.

### D. LIKELIHOOD OF UNDUE DELAY AND NEEDLESS REPETITION

The sixth *Gigliobianco* factor asks us to evaluate the likelihood that the extraneous evidence consumed an inordinate amount of time or repeated evidence already admitted. 210 S.W.3d at 641. The evidence in this case did neither. As already explained, the extraneous-assault evidence constituted a small portion of the trial and came only through Kennedy's straightforward testimony. And it was not repeated in any way by any other means at trial. Accordingly, we hold that this factor does not weigh in favor of exclusion.

Having held that none of the *Gigliobianco* factors weigh in favor of exclusion, we hold that the trial court did not abuse its discretion by admitting the extraneous-assault evidence over Rios's Rule 403 objection. Therefore, we overrule his sole point.

### IV. CONCLUSION

Having overruled Rios's sole point, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 18, 2024